UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------X

YISRAEL Z. HEILMANN,                        Civil Action No. _____


                        Plaintiff,          **COMPLAINT**

                                            **JURY TRIAL DEMANDED**


        -against-


YESHIVA UNIVERSITY,Dr.REBECCA CYPESS, MOSHE DAVIDOVICS, SAPIR
AMAR, JOHN DOES 1-10



Defendants.

-------------------------------------X

Heilmann v. Yeshiva University Et Al | Obstruction of Justice | Case No. [TBD] | U.S. District Court – Southern District of New York

Plaintiff Yisrael Z. Heilmann, proceeding pro se but expecting to retain counsel, files this Complaint against Defendants Yeshiva University, Rebecca Cypess, Moshe Davidovics, Sapir Amar, and John Does 1–10, and alleges as follows:

# Preliminary Statement

1. **Nature of the Action:** This is a civil action for **Intentional Spoliation of Evidence and Obstruction of Justice** under federal law and New York common law. Plaintiff Yisrael Z. Heilmann ("Plaintiff") was a graduate student of German origin at Yeshiva University ("YU") who became the victim of hate-fueled harassment and a violent on-campus assault. Instead of addressing the misconduct, Defendants – including University administrators – engaged in a deliberate cover-up: they destroyed, concealed, and tampered with evidence of the wrongdoing, and intimidated Plaintiff to deter him from seeking legal redress. Defendants' calculated acts perverted the course of justice, compounding the harm to Plaintiff. As a result, Plaintiff suffered profound additional injury to his mental well-being, educational and career trajectory, and reputation. Plaintiff seeks both compensatory and punitive damages in a total amount of **One Hundred Seventy-Seven Million Dollars ($177,000,000)** to hold Defendants accountable for this egregious misconduct and to deter such unlawful acts in the future.

2. **Rule 11(b) Compliance:** Plaintiff brings this Complaint in full compliance with Rule 11(b) of the Federal Rules of Civil Procedure. The factual allegations herein are made after reasonable inquiry and are supported by evidentiary material – including witness statements, electronic communications, and contemporaneous records – or are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery. Plaintiff affirms that this

*Filed in Good Faith Pursuant to Rule 11(b); Evidence Supporting All Claims Preserved for Production.*

Heilmann v. Yeshiva University Et Al | Obstruction of Justice | Case No. [TBD] | U.S. District Court – Southern District of New York

pleading is filed in good faith, is well-grounded in fact and law (or a good-faith argument for extending existing law), and is not being presented for any improper purpose. All evidence supporting the claims has been preserved and will be produced as required.

3. **Distinct Wrongdoing:** This action addresses a **separate and independently actionable course of conduct** by Defendants: a concerted effort to spoliate evidence and obstruct justice. The focus here is not the initial discrimination or assault inflicted on Plaintiff, but rather Defendants' subsequent cover-up and interference with legal processes. These wrongful acts – the destruction of evidence, concealment of facts, and intimidation of Plaintiff – violated Plaintiff's rights and the integrity of the judicial system, above and beyond the underlying incidents. Plaintiff brings this suit to remedy the distinct injuries caused by Defendants' spoliation and obstruction, which are **separate from** (and in addition to) the harms from the original assault and discrimination.

# Jurisdiction and Venue

4. **Jurisdiction:** This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law – specifically, 42 U.S.C. § 1985(2), which prohibits conspiracies to obstruct justice and intimidate parties or witnesses. The Court also has jurisdiction under 28 U.S.C. § 1343(a) because Plaintiff seeks to redress the deprivation of civil rights, and under 28 U.S.C. § 1367 for the related New York state-law claim, as it forms part of the same case or controversy.

5. **Venue:** Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this District. Yeshiva University's main campus is located in New York County (Manhattan), within this District, and the acts of evidence spoliation and obstruction of justice described herein were

*Filed in Good Faith Pursuant to Rule 11(b); Evidence Supporting All Claims Preserved for Production.*

Heilmann v. Yeshiva University Et Al | Obstruction of Justice | Case No. [TBD] | U.S. District Court – Southern District of New York

orchestrated and carried out in Manhattan. All Defendants reside in, are found in, or conduct business in this District.

## Parties

6. **Plaintiff:** Yisrael Z. Heilmann is a natural person of German national origin. At all relevant times, Plaintiff was a graduate-level student at Yeshiva University in New York, New York. He was enrolled in YU's academic program and resided in New York City while pursuing his studies. (Plaintiff is currently proceeding **pro se**, but reserves the right to obtain counsel and will update his representation status accordingly.)

7. **Defendant Yeshiva University ("YU" or "the University"):** YU is a private research university and educational institution incorporated in New York, with its principal campus located in Manhattan, New York. YU receives federal funding and is subject to federal and state regulations. At all relevant times, YU employed or controlled the individual Defendants and those individuals were acting within the scope of their authority (or apparent authority) in dealing with Plaintiff's complaints. YU is vicariously liable for the acts of its agents and employees described herein, and it also participated directly in the wrongful conduct through its senior officials and counsel.

8. **Defendant Rebecca Cypess:** Rebecca Cypess is an individual residing in New York who, upon information and belief, at relevant times served as a Dean at Yeshiva University (specifically, Dean of Yeshiva College and Stern College for Women). In that high-level administrative capacity, Defendant Cypess had oversight over student academic affairs and was involved in addressing student grievances. She is sued in her individual capacity. As detailed

*Filed in Good Faith Pursuant to Rule 11(b); Evidence Supporting All Claims Preserved for Production.*

Heilmann v. Yeshiva University Et Al | Obstruction of Justice | Case No. [TBD] | U.S. District Court – Southern District of New York

below, Defendant Cypess personally participated in the spoliation and obstruction by tampering with critical evidence and refusing to communicate with Plaintiff once he sought legal counsel.

9. **Defendant Moshe Davidovics:** Moshe Davidovics is an individual residing in New York and, upon information and belief, was at all relevant times an administrator at Yeshiva University. Defendant Davidovics's exact title is presently unknown to Plaintiff, but he was involved in handling student affairs, including matters related to discipline, accommodations, or complaint resolution. He is sued in his individual capacity. As described herein, Defendant Davidovics was aware of Plaintiff's reports of assault and harassment and participated in the institutional suppression of those reports and the related evidence.

10. **Defendant Sapir Amar:** Sapir Amar is an individual who, at all relevant times, was a student at Yeshiva University in New York. Defendant Amar was directly involved in the underlying incidents: he is the primary wrongdoer who harassed and physically assaulted Plaintiff. He is sued in his individual capacity. In addition to his direct acts of harassment, Defendant Amar participated in the obstruction of justice by attempting to avoid accountability – for example, by providing false or misleading information about the events and by acquiescing in (or encouraging) the concealment of evidence of his misconduct.

11. **Defendants John Does 1–10:** John Does 1 through 10 are persons currently unknown to Plaintiff who were involved in the events alleged herein and in Defendants' spoliation of evidence or obstruction of justice. These Doe Defendants may include other YU administrators, faculty, security personnel, IT staff, attorneys, or associates of the named Defendants who aided and abetted the wrongful acts. Plaintiff will amend this Complaint to name these individuals once their identities and roles are ascertained. All Doe Defendants are sued in their individual capacities.

*Filed in Good Faith Pursuant to Rule 11(b); Evidence Supporting All Claims Preserved for Production.*

Heilmann v. Yeshiva University Et Al | Obstruction of Justice | Case No. [TBD] | U.S. District Court – Southern District of New York

# Factual Background

**Background of Harassment and Assault:**

12.     In early 2024, Plaintiff experienced an escalating campaign of harassment and bias at Yeshiva University due to his national origin (German). This hostile environment culminated in a violent assault on March 21, 2024, when Plaintiff was physically attacked by another student (Defendant Sapir Amar) on YU's campus. During this attack – which was the tragic peak of prior threats and antagonism – Plaintiff was beaten and sustained serious injuries. He was later diagnosed with a traumatic brain injury (concussion), hearing loss, and post-traumatic stress disorder (PTSD), among other injuries, as a result of the assault. The assault was motivated by hatred and animus toward Plaintiff (including anti-German sentiment), and it occurred after a series of incidents in which Plaintiff had been bullied and demeaned. Immediately before the violent attack, Defendant Amar had stolen or tampered with Plaintiff's personal property (including a laptop charger), provoking a confrontation. The next day, Amar and possibly other associates accosted Plaintiff, leading to the vicious physical assault that left Plaintiff bloodied and injured.

13.     **YU's Awareness and Duty to Preserve Evidence:** Plaintiff promptly reported the assault and the preceding harassment to YU authorities. On the night of March 21, 2024, campus security and administrative staff became directly aware of the incident – security officers responded to the scene, and Plaintiff informed multiple University officials of what had occurred. In the days and weeks following, Plaintiff lodged formal complaints within the University, detailing the harassment he had faced (including prior threats, thefts, and the culminating assault). YU and its administrators therefore knew of the misconduct perpetrated against Plaintiff and understood that

*Filed in Good Faith Pursuant to Rule 11(b); Evidence Supporting All Claims Preserved for Production.*

Plaintiff might pursue legal action or formal proceedings for redress. This knowledge imposed a duty on YU and its agents to investigate honestly and to **preserve any evidence** related to the incidents (such as surveillance footage, incident reports, correspondence, physical evidence of the assault, and witness accounts). Additionally, by the spring of 2024, it was reasonably foreseeable – and in fact known – that Plaintiff's allegations could result in legal proceedings (whether criminal, civil, or administrative). YU was obligated under law and basic standards of integrity not to destroy or tamper with relevant evidence.

14.     **Defendants' Response – Cover-Up Instead of Action:** Rather than treating Plaintiff as a victim and addressing the wrongdoing, Yeshiva University (through its administrators) chose to protect itself and the perpetrators. Almost immediately, Defendants set upon a course of **cover-up and retaliation**. University officials downplayed the assault and took no meaningful corrective action against Defendant Amar or others involved. On information and belief, YU did **not**report the assault to local law enforcement as a hate crime or serious incident, nor did it initiate any transparent disciplinary process that would hold the assailant accountable. Instead, certain YU administrators acted to **suppress the truth**: they characterized the incident internally as a minor altercation or a misunderstanding, and they discouraged Plaintiff from "making a fuss." When Plaintiff pressed for justice – asking that his attacker be expelled or appropriately sanctioned – he was met with indifference, stonewalling, or overt hostility from those in authority. In effect, Defendants treated Plaintiff as a problem to be managed, rather than a victim to be helped. This adversarial posture set the stage for the deliberate destruction and concealment of evidence that followed.

15.     **Failure to Preserve Critical Video Evidence:** The March 21 assault occurred in a campus location that was under video surveillance (or where Defendants had the ability to capture

*Filed in Good Faith Pursuant to Rule 11(b); Evidence Supporting All Claims Preserved for Production.*

Heilmann v. Yeshiva University Et Al | Obstruction of Justice | Case No. [TBD] | U.S. District Court – Southern District of New York

photographic/video evidence immediately after the attack). Upon information and belief, YU possessed or had access to security camera footage or other video evidence documenting the altercation and its aftermath. However, Defendants failed to preserve this critical evidence. Despite the obvious relevance of any video showing Plaintiff's assault (and the identity and actions of his attacker), no such footage was ever produced or disclosed to Plaintiff or investigators. If surveillance video existed, Defendants either **destroyed it, erased it, or intentionally chose not to retain it** in violation of their duty. If no stationary camera footage was available, Defendants still had opportunities to capture evidence (for instance, campus security officers at the scene could have taken photographs of Plaintiff's injuries or the crime scene). Any such visual evidence was similarly not preserved or was later hidden. The absence of video/photographic evidence has greatly hindered Plaintiff's ability to prove the brutality of the attack and the culpability of the assailant. On information and belief, the decision not to save or produce the video was *intentional*: Defendants understood that visual evidence would corroborate Plaintiff's account and expose the University to liability, so they ensured that no such evidence would come to light.

16.     **Tampering with Email Records (Dean Cypess Incident):** Defendants' spoliation extended to written communications. In one notable incident, Defendant Rebecca Cypess – a Dean at YU – **deleted or caused the deletion of email correspondence relevant to Plaintiff's complaints.** In or about late 2024, Plaintiff reached out to Dean Cypess for help, informing her of the assault and the University's lack of adequate response. Initially, Cypess engaged in an email discussion with Plaintiff. However, once she learned that Plaintiff had sought advice from an attorney, Cypess abruptly terminated the dialogue. She expressly stated to Plaintiff in an email: *"Because you have taken legal counsel, I cannot speak to you anymore."* Immediately thereafter, Plaintiff discovered that portions of their email exchange **went missing**from the email thread, including an attachment – a detailed letter that Plaintiff's attorney had written to the University

*Filed in Good Faith Pursuant to Rule 11(b); Evidence Supporting All Claims Preserved for Production.*

Heilmann v. Yeshiva University Et Al | Obstruction of Justice | Case No. [TBD] | U.S. District Court – Southern District of New York

outlining Plaintiff's grievances. A third-party witness who had seen the complete email thread before noticed that, later, the attorney's letter and related messages were gone. The only way such content could vanish is through deliberate deletion or manipulation of the email records. Upon information and belief, Defendant Cypess (or someone acting at her behest or direction) intentionally deleted these emails or otherwise removed them from accessible records, thereby destroying evidence of (a) Plaintiff's attempt to seek administrative remedy and (b) YU's dismissive response. This **email tampering** eliminated proof of Cypess's refusal to communicate and the existence of Plaintiff's counsel's letter – evidence that would have demonstrated YU's knowledge of the claims and its hostile posture toward Plaintiff's complaints. By scrubbing the record, Defendants sought to leave no trace of this exchange, which they knew could incriminate them by showing retaliatory intent.

17.    **Concealment of Defendant Amar's Admissions and Other Documents:** Defendants also hid or destroyed evidence of wrongdoing that came **from the perpetrators themselves**. For example, prior to the March 21 assault, Defendant Sapir Amar effectively **admitted to misconduct** in the lead-up incident involving Plaintiff's property. Specifically, on or about March 20, 2024, Plaintiff's laptop charger was stolen, and Defendant Amar later acknowledged (to at least one other student or staff member) that he had taken or hidden the charger as a "prank" or harassment tactic. This admission – whether made in writing (such as a text message or email) or orally – was highly relevant: it showed Amar's culpability in harassing Plaintiff and provided a motive and context for the ensuing violence. Upon information and belief, University officials became aware of Amar's admission (for instance, a resident advisor or administrator received reports or messages about the charger incident). However, **no record of Amar's admission was preserved or produced**. Any written communication in which Amar discussed the charger theft was either deleted by Amar at

*Filed in Good Faith Pursuant to Rule 11(b); Evidence Supporting All Claims Preserved for Production.*

the University's encouragement or was withheld by Defendants when Plaintiff later sought evidence. Likewise, if any University staff made notes or incident reports about the charger theft or the assault, those documents were concealed or destroyed. Defendants never disclosed these damaging admissions during internal investigations or the subsequent external investigation. By concealing evidence of Amar's prior bad act and admission, Defendants protected the assailant at the expense of the truth – ensuring that a key piece of corroborating evidence (that the assault was preceded by intentional harassment) would not surface to support Plaintiff's case.

18.    **Suppression of Official Reports and Witness Statements:** In the normal course, an assault on campus would generate various official records – security reports, disciplinary meeting notes, witness statements, medical records from campus health services, etc. Defendants have **stonewalled** Plaintiff's access to such records and, on information and belief, have tampered with their contents. For example, YU security personnel who responded on March 21, 2024 likely prepared an incident report. To date, Plaintiff has not seen any such report; if it exists, Defendants have refused to release it (even during subsequent proceedings when its production was requested), and if it does not exist, that itself suggests a deliberate failure to document a known violent incident. Similarly, multiple students and staff witnessed aspects of the events (either the assault itself or its aftermath). Yet Defendants either failed to take formal statements from these witnesses or have hidden those statements. Some witnesses later informed Plaintiff that they were **never interviewed** by YU officials about what they saw, implying that the University intentionally avoided collecting testimony that would support Plaintiff. Other witnesses who did provide information saw their accounts downplayed or mischaracterized in YU's internal narrative. In sum, Defendants systematically **sanitized the paper trail** of the assault and harassment: anything that would validate Plaintiff's story was excluded or erased, while information that could be used to

*Filed in Good Faith Pursuant to Rule 11(b); Evidence Supporting All Claims Preserved for Production.*

Heilmann v. Yeshiva University Et Al | Obstruction of Justice | Case No. [TBD] | U.S. District Court – Southern District of New York

discredit Plaintiff was retained or even fabricated. This manipulation of records is a form of spoliation just as much as destroying physical evidence – it denies a future trier of fact the full truth.

19.     **Retaliatory Acts to Silence Plaintiff (Visa and Enrollment Threats):** Defendants did not limit their obstruction to evidence – they also directly targeted Plaintiff to pressure him into dropping his complaints. In the months following the assault, YU officials took adverse actions against Plaintiff that had no legitimate basis, clearly as retaliation for his persistence in seeking justice. Most alarmingly, the University moved to **terminate Plaintiff's enrollment and student status** on a pretextual ground, which in turn threatened Plaintiff's lawful immigration status. (As an international student from Germany, Plaintiff's ability to remain in the United States was contingent on his active enrollment at YU.) In mid-2024, shortly after Plaintiff raised complaints about the assault and the University's inaction, YU abruptly notified Plaintiff that he was being removed from student housing and would not be allowed to continue in his program, citing an alleged technicality (unrelated to the assault) that had never been enforced against others. Specifically, YU claimed that Plaintiff's age disqualified him from student housing and certain programs – a rationale that was **entirely pretextual and discriminatory**, given that other students outside the typical age range were not expelled. This retaliatory expulsion from housing and effectively from the University had dire consequences: Plaintiff's **student visa was slated for termination**, meaning he would be forced to leave the country and abandon his pursuit of any legal claims here. Defendants knew full well the leverage this gave them over Plaintiff. The message was unmistakable – if Plaintiff did not stay quiet, he risked losing his education and being deported. Faced with this intimidation, Plaintiff's ability to continue pressing his case was severely compromised. (Plaintiff ultimately had to scramble to protect his status and challenge the

*Filed in Good Faith Pursuant to Rule 11(b); Evidence Supporting All Claims Preserved for Production.*

Heilmann v. Yeshiva University Et Al | Obstruction of Justice | Case No. [TBD] | U.S. District Court – Southern District of New York

University's actions, which caused immense stress and disruption.) Defendants' willful use of bureaucratic retaliation (housing and visa) is an integral part of their obstruction of justice: by making Plaintiff fear for his basic future, they sought to **chill him from pursuing any further complaints or lawsuits**.

20.      **Threats and Misinformation via Counsel:** Defendants further obstructed justice by deploying their attorneys to threaten and mislead Plaintiff. On or about April 9, 2025, after Plaintiff had filed a formal civil-rights complaint with the New York State Division of Human Rights ("NYSDHR") (and was preparing to assert his rights in court), Yeshiva University's outside counsel sent Plaintiff a **menacing letter**. In that letter, YU's attorney (acting with the University's authorization) categorically denied any wrongdoing by YU or its personnel and warned Plaintiff against pursuing any litigation. The letter threatened that if Plaintiff filed a lawsuit or "continued" his complaints, he would face aggressive counter-action – including possible claims against him for costs, fees, or other sanctions. The tone and content of the letter were plainly calculated to intimidate. There was no legitimate resolution effort or good-faith discussion in this correspondence; instead, it constituted an attempt to scare Plaintiff into silence by invoking the specter of legal and financial harm. This was **witness intimidation and obstruction** in everything but name: YU, through counsel, was effectively telling the victim of harassment that seeking justice would result in him being punished. Around the same time, YU's counsel even took the unusual step of contacting one of Plaintiff's advisors overseas (in Germany) to disparage Plaintiff's character and undermine his support network – another tactic aimed at isolating and pressuring Plaintiff to drop his claims. These acts by YU's agents are attributable to the Defendants and form part of their overall scheme to obstruct justice. They demonstrate that Defendants did not

*Filed in Good Faith Pursuant to Rule 11(b); Evidence Supporting All Claims Preserved for Production.*

Heilmann v. Yeshiva University Et Al | Obstruction of Justice | Case No. [TBD] | U.S. District Court – Southern District of New York

confine their misconduct to behindthe-scenes evidence tampering; they directly confronted Plaintiff with **legal threats** to deter him from exercising his right to be heard in court.

21.    **Obstructive Conduct Impedes Investigations:** Defendants' concerted acts of spoliation and obstruction succeeded, at least temporarily, in derailing justice. Due to the missing evidence and false narrative propagated by Defendants, the truth of what happened to Plaintiff was obscured in official channels. For example, during the NYSDHR's investigation of Plaintiff's discrimination complaint, YU's response (submitted by its counsel and based on the distorted internal record) was full of misrepresentations and omissions. Defendants, having destroyed or hidden the real evidence of harassment, painted Plaintiff as a bad actor and his claims as unfounded. Without the critical emails, video, and corroborating documents that Defendants had concealed, the agency's factfinding was stymied. Similarly, any internal YU disciplinary or grievance process was compromised from the start – the officials tasked with handling it were the very ones involved in the cover-up. The end result was that **no meaningful remedial action** was taken: Plaintiff's complaints were rejected or went unredressed, and the perpetrators faced little to no consequences at that time. Defendants thus achieved their aim of protecting themselves and the University's reputation at the expense of truth and accountability. However, their success was only temporary. Plaintiff persisted and eventually uncovered enough evidence (through his own efforts and external sources) to bring the matter before this Court. Still, the damage caused by Defendants' obstruction is done – evidence that should exist is gone, and Plaintiff has had to fight an uphill battle that no victim should have to face.

22.    **Harm Caused by Spoliation and Obstruction:** The fallout from Defendants' misconduct has been devastating to Plaintiff. By destroying evidence and undermining his efforts to seek redress, Defendants compounded Plaintiff's suffering. Emotionally, Plaintiff endured profound

*Filed in Good Faith Pursuant to Rule 11(b); Evidence Supporting All Claims Preserved for Production.*

Heilmann v. Yeshiva University Et Al | Obstruction of Justice | Case No. [TBD] | U.S. District Court – Southern District of New York

**distress, humiliation, and despair** from being denied a fair opportunity to prove what happened to him. The sense of injustice – knowing that the very institution he trusted not only failed to protect him but actively covered up the wrong – exacerbated his trauma. Plaintiff's recovery from the assault was hindered by the ongoing battle to obtain acknowledgement of the truth. Educationally and professionally, Plaintiff's trajectory was derailed: the retaliatory expulsion from housing and the hostile environment forced Plaintiff to interrupt his studies and cast uncertainty on the completion of his program. Opportunities that would have been available to him (had he been treated as a deserving survivor rather than a nuisance) vanished – including research positions, recommendations, and a normal academic progression. Plaintiff's reputation was also tarnished by Defendants' actions; within the YU community and in official records, he was portrayed as someone making baseless complaints, which is a stigma that can follow a student into future endeavors. The **injuries caused by the cover-up** are distinct from those of the original assault – they are the injuries of being denied justice. To this day, Plaintiff suffers ongoing anxiety and loss of trust in institutions, knowing that evidence can be erased and truth subverted. This lawsuit seeks to remedy those distinct injuries by holding Defendants liable for their intentional spoliation of evidence and obstruction of justice.

# First Cause of Action: Intentional Spoliation of Evidence (New York Common Law)

23.    **Incorporation of Allegations:** Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs as though fully set forth herein.

Heilmann v. Yeshiva University Et Al | Obstruction of Justice | Case No. [TBD] | U.S. District Court – Southern District of New York

24.     **Duty to Preserve Evidence:** Defendants knew or reasonably should have known that litigation or official proceedings concerning the March 2024 assault, the related harassment, and YU's handling thereof was likely and imminent. Plaintiff explicitly complained about these matters to the University, and by mid-2024 he had initiated a formal proceeding with the NYSDHR – developments which put Defendants on clear notice of potential civil litigation. Accordingly, under New York law and general common-law principles, Defendants had a legal duty to preserve any evidence in their possession or control that was relevant to Plaintiff's claims. This duty extended to Yeshiva University as an institution and to the individual Defendants (as officers, employees, or associates of YU) who had access to relevant evidence or had the ability to ensure its preservation.

The scope of this duty encompassed, **inter alia**, physical evidence of the assault, security camera footage, incident reports, witness statements, emails and communications concerning the incidents, and any other documentation generated in connection with Plaintiff's complaints.

25.     **Breach by Destruction and Concealment:** Defendants breached their duty by intentionally destroying, discarding, altering, or concealing material evidence. As detailed above, Defendants engaged in numerous acts of **spoliation**, including but not limited to: (a) failing to retain and/or intentionally deleting video surveillance footage of the assault; (b) deleting portions of email correspondence (such as the Plaintiff–Dean Cypess email thread and attached attorney letter) to eliminate incriminating content; (c) withholding or destroying written records of Defendant Amar's admission to prior misconduct (the charger theft) and other documents that corroborated Plaintiff's account; and (d) not preserving official incident reports or witness statements – or deliberately never creating them – in order to leave no paper trail of the assault. These actions were taken willfully and in bad faith. Defendants knew the evidence in question was relevant and would

*Filed in Good Faith Pursuant to Rule 11(b); Evidence Supporting All Claims Preserved for Production.*

Heilmann v. Yeshiva University Et Al | Obstruction of Justice | Case No. [TBD] | U.S. District Court – Southern District of New York

likely be damaging to them, and they **intended** to prevent this evidence from ever being seen by investigators, adjudicators, or any court. In doing so, Defendants blatantly violated their preservation obligations and betrayed the trust placed in them to act with honesty in the face of potential litigation.

26.     **Intent and Improper Purpose:** Defendants' spoliation of evidence was not accidental or negligent – it was **intentional** and done with an improper purpose. Upon information and belief, the decision to destroy or hide each piece of evidence was made consciously, either by the individual Defendant directly involved or by others at YU acting in concert with or under the direction of the individual Defendants. For example, Defendant Cypess's deletion of emails was a deliberate act once she realized Plaintiff had legal counsel; similarly, the absence of the video footage reflects a deliberate choice not to safeguard it. Defendants undertook these actions specifically to **disrupt Plaintiff's ability to prove his claims** and to shield themselves and the University from liability. In other words, Defendants engaged in spoliation *for the express purpose* of undermining the truth-finding process of any current or future proceedings. Such conduct exhibits a high degree of moral culpability and a flagrant disdain for the legal system.

27.     **Causation and Damage to Plaintiff:** Defendants' intentional spoliation of evidence has directly and proximately caused significant prejudice and harm to Plaintiff. Key evidence that would likely have substantiated Plaintiff's case is now unavailable, irretrievable, or tainted. This lack of evidence has impeded Plaintiff's pursuit of justice – for instance, the NYSDHR's investigation did not have the benefit of seeing the contemporaneous communications or video that Defendants hid, which weakened Plaintiff's position in that forum. Plaintiff has been forced to expend additional time, effort, and resources to seek out alternative evidence (if any could even be found) to replace what Defendants destroyed. He has had to litigate on an uneven playing field,

*Filed in Good Faith Pursuant to Rule 11(b); Evidence Supporting All Claims Preserved for Production.*

Heilmann v. Yeshiva University Et Al | Obstruction of Justice | Case No. [TBD] | U.S. District Court – Southern District of New York

burdened by the handicap Defendants deliberately created. Moreover, the spoliation itself has caused Plaintiff mental anguish: discovering that evidence was missing or altered gave Plaintiff a deep sense of helplessness and outrage, compounding the trauma of the original assault. In terms of damages, Plaintiff has suffered (a) **litigation-related losses** – incurring greater legal expenses and delay in obtaining relief, and (b) **compensatory losses** for the aggravation of his emotional distress and the derailment of his education/career caused by the prolongation of the dispute. Under New York common law, Plaintiff is entitled to recover for these damages flowing from Defendants' intentional interference with his ability to prove his case. Defendants' spoliation has effectively **denied Plaintiff a fair adjudication** of the underlying wrongs, an injury for which monetary compensation is due. Furthermore, given the willful and egregious nature of Defendants' conduct, an award of **punitive damages** is warranted on this cause of action to punish Defendants and deter any such future abuse of the judicial process.

## Second Cause of Action: Obstruction of Justice – Conspiracy to Interfere with Civil Rights (42 U.S.C. § 1985(2))

28.    **Incorporation of Allegations:** Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs as though fully set forth herein.

29.    **Conspiracy to Obstruct Justice:** Defendants Yeshiva University, Cypess, Davidovics, Amar, and others known and unknown (including the John Doe Defendants) reached an agreement and understanding to act in concert to impede and obstruct justice in violation of federal law. From 2024 onward, these Defendants combined together with the shared objective of **preventing Plaintiff from obtaining a fair hearing of his grievances** and retaliating against him for asserting

*Filed in Good Faith Pursuant to Rule 11(b); Evidence Supporting All Claims Preserved for Production.*

Heilmann v. Yeshiva University Et Al | Obstruction of Justice | Case No. [TBD] | U.S. District Court – Southern District of New York

his rights. They coordinated their actions to ensure that Plaintiff's pursuit of legal remedies – whether through internal complaint processes, administrative agencies, or the courts – would be thwarted. This meeting of the minds is evidenced by the sequence of acts described: multiple individuals took complementary steps (e.g., one deleting emails, another withholding records, others threatening Plaintiff) all directed toward the same end. The conspiracy operated under the color of official authority (in the case of YU administrators) and personal interest (in the case of Defendant Amar seeking to avoid discipline), aligning the Defendants in a common cause. Each Defendant was an active participant in, and/or gave knowing consent to, this scheme of obstruction.

30.    **Overt Acts in Furtherance of Conspiracy:** In furtherance of the above conspiracy, Defendants committed numerous overt acts, including but not limited to the following:

- **Evidence Tampering:** Defendants Cypess and others deliberately destroyed and concealed documentary evidence (emails, records, etc.), as alleged in detail in the First Cause of Action, to frustrate any investigation or legal claim by Plaintiff.

- **Intimidation and Threats:** Defendants (including YU through its officials and counsel) intimidated Plaintiff by threatening to terminate his enrollment (thereby jeopardizing his visa and education) and by sending the April 9, 2025 letter warning him against filing suit. Defendant Amar and/or associates also harassed and warned Plaintiff, implicitly or explicitly, that involving authorities would result in further trouble for him. These actions were intended to **deter Plaintiff from attending or testifying in any court proceeding** and to retaliate against him for raising complaints.

- **Misleading and Influencing Investigators:** Defendants collaborated in providing false, misleading, or incomplete information to the NYSDHR (and any other investigative

*Filed in Good Faith Pursuant to Rule 11(b); Evidence Supporting All Claims Preserved for Production.*
Page 18 of 25

*Heilmann v. Yeshiva University Et Al | Obstruction of Justice | Case No. [TBD] | U.S. District Court –
Southern District of New York*

bodies). They forwarded a knowingly false position statement to the NYSDHR that omitted

mention of the assault's video evidence and painted Plaintiff as a bad actor, all while

concealing the true evidence. By doing so, Defendants sought to **impede the due course of**

**justice** in that state proceeding, hoping to block Plaintiff from vindicating his rights.

- **Silencing Witnesses:** Upon information and belief, members of the conspiracy discouraged

  other students and staff from coming forward to support Plaintiff. Whether through

  suggesting to witnesses that they "stay out of it" or by not recording their statements,

  Defendants effectively silenced those who might have corroborated Plaintiff's claims. This

  ensured that critical testimony would be unavailable if Plaintiff took the matter to court.

Each of these acts was done in furtherance of the agreed plan to obstruct justice. They were not

isolated incidents but part of a continuous campaign orchestrated by Defendants to violate

Plaintiff's rights.

31.     **Violation of 42 U.S.C. § 1985(2):** Defendants' conduct constitutes a violation of 42 U.S.C.

§ 1985(2), which prohibits conspiracies to deter, by force, intimidation or threat, any party or

witness from attending or testifying freely in any court of the United States, or to injure such party

or witness on account of his having sought justice, and conspiracies to otherwise obstruct justice

with the intent to deny equal protection of laws. Here, Defendants (two or more persons) conspired

to intimidate and hinder Plaintiff in the exercise of his rights to seek redress in U.S. courts. The

threats to Plaintiff's education and legal status, and the retaliatory acts taken against him (such as

the attempted expulsion and the intimidatory letter), were forms of **intimidation and coercion**

aimed at preventing Plaintiff from further pursuing legal action or punishing him for the action he

had already taken (filing complaints). These acts meet the definition of unlawful interference

*Filed in Good Faith Pursuant to Rule 11(b); Evidence Supporting All Claims Preserved for Production.*

Heilmann v. Yeshiva University Et Al | Obstruction of Justice | Case No. [TBD] | U.S. District Court – Southern District of New York

contemplated by § 1985(2). Additionally, Defendants' tampering with evidence and dissemination of false information effectively obstructed the due course of justice in the state forum (NYSDHR) in a manner that deprived Plaintiff of the equal protection of the laws – as an individual complaining of discrimination, he was entitled to a fair process, which Defendants intentionally sabotaged because of who he was and the nature of his complaints. Defendants acted with animus and a reckless disregard for Plaintiff's rights. Their concerted misconduct was **intentional, willful, and motivated by a desire to insulate themselves (and the institution) from accountability**, even if that meant trampling on Plaintiff's civil rights.

32.    **Injury and Damages:** As a direct and proximate result of Defendants' conspiracy and obstructive acts, Plaintiff suffered substantial injuries, as previously described. Defendants' actions delayed and denied justice, causing Plaintiff to endure extended emotional turmoil, financial strain, and reputational harm. Plaintiff's right to a fair legal process was fundamentally compromised, forcing him to overcome obstacles not of his own making in order to have his grievances heard. The injuries caused by this civil rights conspiracy include the exacerbation of Plaintiff's emotional distress, the loss of educational and professional opportunities due to the retaliation, and the expenses incurred in fighting through the obstruction to bring the truth to light. Plaintiff is entitled to recover compensatory damages for these injuries under 42 U.S.C. § 1985(3) (which provides a civil cause of action for victims of § 1985 conspiracies). Furthermore, because Defendants acted **maliciously, willfully, and with callous disregard** for Plaintiff's rights, Plaintiff seeks an award of punitive damages on this claim to punish Defendants and deter similar conduct. Plaintiff also seeks to recover his costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, as this Second Cause of Action is an action to enforce civil rights laws. Defendants should be jointly and severally liable for the full extent of Plaintiff's damages resulting from their obstruction of justice.

*Filed in Good Faith Pursuant to Rule 11(b); Evidence Supporting All Claims Preserved for Production.*

Heilmann v. Yeshiva University Et Al | Obstruction of Justice | Case No. [TBD] | U.S. District Court – Southern District of New York

# Prayer for Relief

WHEREFORE, Plaintiff Yisrael Z. Heilmann respectfully demands judgment in his favor and against Defendants Yeshiva University, Rebecca Cypess, Moshe Davidovics, Sapir Amar, and John Does 1–10, jointly and severally, and requests that the Court grant the following relief:

1. **Compensatory Damages:** An award of compensatory damages in the amount of **$30,000,000** (Thirty Million U.S. Dollars), to compensate Plaintiff for the injuries caused by Defendants' spoliation of evidence and obstruction of justice. This sum is intended to redress Plaintiff's tangible and intangible losses, including the emotional pain, mental anguish, and trauma exacerbated by Defendants' cover-up; the disruption of Plaintiff's education and career opportunities; damage to Plaintiff's reputation; and other actual harm that resulted from the denial of a fair process.

2. **Punitive Damages:** An award of punitive damages in the amount of **$147,000,000** (One Hundred Forty-Seven Million U.S. Dollars), which is approximately 4.9 times the compensatory damages, in order to punish Defendants for their egregious, willful misconduct and to deter such conduct in the future. Defendants' actions – involving malice, fraud, and intentional deceit of the judicial process – were morally reprehensible and offend public policy. A punitive award at this level is justified given Defendants' blatant disregard for the rule of law and the rights of others.

3. **Declaratory Relief:** A declaratory judgment pursuant to 28 U.S.C. §§ 2201–2202 declaring that Defendants' conduct as alleged herein was unlawful and violated Plaintiff's rights. In particular, Plaintiff seeks a declaration that Defendants intentionally spoliated evidence and obstructed justice in connection with Plaintiff's assault and complaints. Such declaratory relief would make clear, for the record, that Plaintiff's claims were impeded by Defendants' misconduct (and not by any lack of

*Filed in Good Faith Pursuant to Rule 11(b); Evidence Supporting All Claims Preserved for Production.*

Heilmann v. Yeshiva University Et Al | Obstruction of Justice | Case No. [TBD] | U.S. District Court – Southern District of New York

merit), thereby helping to restore Plaintiff's good name and affirming his right to seek redress without interference.

4. **Injunctive Relief:** Appropriate injunctive relief to prevent any further obstruction of justice or retaliation by Defendants. This may include, but is not limited to: an order enjoining Defendants from destroying, altering, or hiding any evidence relevant to Plaintiff's claims (including any remaining records of the assault or complaints) and requiring Defendants to promptly preserve and disclose all such evidence; an order prohibiting Defendants from engaging in any form of retaliation or harassment against Plaintiff (or witnesses) in connection with this lawsuit or any related proceedings; and an order mandating that Yeshiva University implement and enforce proper policies/training regarding evidence preservation and anti-retaliation – so that no student's complaint in the future will be met with the kind of misconduct that occurred here. The Court's oversight through injunctive relief is warranted given Defendants' past actions and the ongoing risk that they could persist in obstruction if not restrained.

5. **Attorneys' Fees and Costs:** An award of Plaintiff's reasonable attorneys' fees and litigation costs incurred in this action, pursuant to 42 U.S.C. § 1988 and any other applicable law. As this case involves the enforcement of important civil rights provisions (including 42 U.S.C. § 1985), Plaintiff is entitled to recover the fees and costs expended to vindicate his rights. This includes all costs of court, filing fees, and any other expenses reasonably incurred, as well as a fair fee for the time of any counsel (should Plaintiff retain counsel) or, if proceeding pro se, other allowable costs and expenses.

6. **Further Relief:** Such other and further relief as the Court deems just and proper. Given the egregious nature of Defendants' conduct, Plaintiff requests that the Court use its full equitable

*Filed in Good Faith Pursuant to Rule 11(b); Evidence Supporting All Claims Preserved for Production.*

Heilmann v. Yeshiva University Et Al | Obstruction of Justice | Case No. [TBD] | U.S. District Court – Southern District of New York

and legal powers to make Plaintiff whole and to prevent Defendants from benefiting from their wrongdoing. This catch-all provision includes, if appropriate, any additional relief – whether monetary, injunctive, or declaratory – that is necessary to achieve justice in this matter.

**JURY DEMAND, RIGHT TO AMEND, AND NON-WAIVER OF RIGHTS**

**RIGHT TO AMEND**

Plaintiff expressly reserves the right to amend this Complaint, pursuant to Rule 15 of the Federal Rules of Civil Procedure, to conform to the evidence as it develops through discovery, to correct any technical or factual inaccuracies, and to assert additional claims, legal theories, or causes of action as may become necessary. This includes, without limitation, the right to add or substitute parties or claims that arise out of the same nucleus of operative facts. This reservation is asserted in the interest of justice, judicial economy, and full adjudication on the merits.

**NON-WAIVER OF RIGHTS**

Nothing in this Complaint shall be construed as a waiver of any rights, remedies, or legal theories available to Plaintiff under the Constitution, statutes, common law, or international law. Plaintiff explicitly and unconditionally reserves the right to assert any and all claims, whether known or unknown, legal or equitable, arising from the events, facts, conduct, omissions, or retaliatory actions described herein or discovered through ongoing investigation or discovery. This includes—but is not limited to—rights under

*Filed in Good Faith Pursuant to Rule 11(b); Evidence Supporting All Claims Preserved for Production.*

Heilmann v. Yeshiva University Et Al | Obstruction of Justice | Case No. [TBD] | U.S. District Court – Southern District of New York

Title VI, Title IX, 42 U.S.C. § 1981, § 1983, § 1985, the Americans with Disabilities Act, New York Executive Law § 296, and applicable international conventions and human rights frameworks. Furthermore, Plaintiff reserves the right to seek legal, injunctive, compensatory, punitive, or declaratory relief in any forum or jurisdiction, and nothing herein shall be interpreted to limit Plaintiff's pursuit of parallel remedies through civil, regulatory, or criminal proceedings.

**JURY TRIAL DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right. Plaintiff respectfully invokes this constitutional entitlement with the utmost seriousness, recognizing that a jury of impartial peers is the proper authority to resolve the deeply factual, reputational, and retaliatory harms alleged herein. This demand applies to all claims, including those sounding in tort, statutory violations, and constitutional deprivations, and shall extend to any future amended or supplemental pleadings.

**PLAINTIFF PRO SE STATEMENT:**

Plaintiff, **Yisrael Z. Heilmann**, appears pro se in this action.

Respectfully submitted,
Dated: April 28, 2025

**/s/ Yisrael Z. Heilmann**

**Yisrael Z. Heilmann, Plaintiff Pro Se**

*Filed in Good Faith Pursuant to Rule 11(b); Evidence Supporting All Claims Preserved for Production.*

Heilmann v. Yeshiva University Et Al | Obstruction of Justice | Case No. [TBD] | U.S. District Court – Southern District of New York

Address: 447 Broadway

2nd FL 945

New York, NY, 10013

Email:   yzh2@protonmail.com

*Filed in Good Faith Pursuant to Rule 11(b); Evidence Supporting All Claims Preserved for Production.*